UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHERYL RENEE SAID,  )<br>  )<br>    Plaintiff,  )<br>  )<br>    v.  )<br>  )<br>THE NATIONAL RAILROAD PASSENGER  )<br>CORPORATION,  )<br>  )<br>    Defendant.  )<br>  ) | Civil Action No. 15-1289 (RBW) |

**MEMORANDUM OPINION**

The plaintiff, Cheryl Renee Said, instituted this civil action against the defendant, the National Railroad Passenger Corporation, which does business as "Amtrak," asserting several causes of action under federal and District of Columbia law for her allegedly unlawful termination by the defendant. See Complaint ("Compl.") ¶¶ 3, 5-6, 43-75. Currently pending before the Court is Plaintiff Cheryl Renee Said's Motion for Leave of Court to Amend the Complaint ("Pl.'s Mot."). After careful consideration of the parties' submissions,[1] as well as their oral arguments at a March 30, 2016 hearing,[2] the Court concludes for the reasons below that it must deny the plaintiff's motion.

---

[1] In addition to the plaintiff's motion, the Court considered the following documents in rendering its decision: (1) the Defendant's Opposition to [the] Plaintiff's Motion for Leave to Amend Complaint ("Def.'s Opp'n"); (2) the Reply in Support of [the] Plaintiff's Motion for Leave to File an Amended Complaint ("Pl.'s Reply"); (3) the Supplemental Brief in Support of [the] Plaintiff's Motion for Leave of Court to File an Amended Complaint Pursuant to Court Order, Doc. 23, Dated 03/30/16, After a Hearing ("Pl.'s Suppl. Br."); (4) the Defendant's Response to [the] Plaintiff's Supplemental Memorandum ("Def.'s Suppl. Mem."); and (5) the Joint Submission of Relevant Excerpts From the Applicable Version of the Collective Bargaining Agreement ("Joint Submission of CBA").

[2] After the hearing, the Court requested additional briefing on certain issues. See March 30, 2016 Order, ECF No. 23.

1

I.      BACKGROUND

The following are the facts underlying this case as alleged by the plaintiff in her complaint and proposed amended complaint. The defendant employed the plaintiff as a "Lead Service Attendant," and at all times relevant to this case, the plaintiff "was a [u]nion member of Amtrak Service Workers Council" ("the Union") and "covered by the Collective Bargaining Agreement ('CBA') between [Amtrak] and [the Union]." Compl. ¶ 5; see also Pl.'s Mot., Ex. 1 (Proposed Amended Complaint ("Proposed Am. Compl.")) ¶ 5. "On or about February 1, 2011, while . . . working[,]" she was "inform[ed] that her husband had died." Compl. ¶ 9; see also Pl.'s Mot., Ex. 1 (Proposed Am. Compl.) ¶ 9. Her "husband's sudden death had a devastating effect on her." Compl. ¶ 14; see also Pl.'s Mot., Ex. 1 (Proposed Am. Compl.) ¶ 14. The plaintiff "became very ill as she suffered prolonged grief, severe depression, anxiety[,] and insomnia," which was all in addition to "the high blood pressure she already suffered from." Compl. ¶ 14; see also Pl.'s Mot., Ex. 1 (Proposed Am. Compl.) ¶ 14.

The plaintiff "was given time off due to the death of her husband." Compl. ¶ 11; see also Pl.'s Mot., Ex. 1 (Proposed Am. Compl.) ¶ 11. As a result of her husband's death, the plaintiff requested a leave of absence on two occasions: February 15, 2011, and March 31, 2011. See Compl. ¶¶ 11-14; see also Compl., Exhibit ("Ex.") B at 1, 3[3]; Pl.'s Mot., Ex. 1 (Proposed Am. Compl.) ¶¶ 11-14. The latter of her requests had an estimated return date from her leave of absence as April 30, 2011. Compl. ¶ 14; see also Compl., Ex. B at 1; Pl.'s Mot., Ex. 1 (Proposed Am. Compl.) ¶ 14. Prior to that latter return date, the plaintiff allegedly called her supervisor,

---

[3] The plaintiff asserts that she submitted written requests for a leave of absence on three occasions and has attached three purported "approved leave of absence sheets" as exhibit B to her complaint. See Compl. ¶ 14. However, exhibit B only has two "approved leave of absence sheets." See Compl., Ex. B at 1, 3. The third sheet included in exhibit B is a document that merely states that she returned from some period of leave on February 26, 2011. Id. at 2.

informed the supervisor that she would "not get better" by then, and "verbally requested another leave of absence over the phone."  Compl. ¶ 15; see also Pl.'s Mot., Ex. 1 (Proposed Am. Compl.) ¶ 15.  The supervisor purportedly "gave her permission" to "take all the time [she] need[ed] to get better before returning to work," i.e., her supervisor "assured" her "that she need not worry about being absent for [as] long . . . as she needed to get well . . . ."  Compl. ¶ 15 (emphasis omitted); see also Pl.'s Mot., Ex. 1 (Proposed Am. Compl.) ¶ 15.  The plaintiff "believed that . . . her supervisor . . . had the authority to give her that verbal permission [for leave], without any need to fill any [paperwork]," and "[s]he relied on that assurance."  Compl. ¶ 15; see also Pl.'s Mot., Ex. 1 (Proposed Am. Compl.) ¶ 15.  "As it turned out[,] [however, her supervisor] had no such authority . . . ."  Compl. ¶ 15; see also Pl.'s Mot., Ex. 1 (Proposed Am. Compl.) ¶ 15.

Between April 30, 2011, and February 9, 2012, the day the plaintiff "reported to work to inform [the defendant] that she was officially returning to work on . . . February 19, 2012," Compl. ¶ 30; see also Pl.'s Mot., Ex. 1 (Proposed Am. Compl.) ¶ 30, she was allegedly informed by multiple superiors verbally that she should take as much time as she needed to recover from the death of her husband, see Compl. ¶¶ 19, 22, 24, 27, 30-31; see also Pl.'s Mot., Ex. 1 (Proposed Am. Compl.) ¶¶ 19, 22, 24, 27, 30-31.  During this period of absence, the plaintiff even received "sickness [disability] benefits" "with [the defendant's] approval."  Compl. ¶ 26; see also Compl. ¶¶ 24, 27-29; Pl.'s Mot., Ex. 1 (Proposed Am. Compl.) ¶¶ 24, 26-29.  Despite her "regular contact" with her superiors, she discovered on February 9, 2012, that her employment had been terminated by the defendant on or about November 4, 2011, through a letter that was sent to an address where the plaintiff had told the defendant she no longer lived.  Compl. ¶ 29; see also Compl. ¶¶ 32-34; Pl.'s Mot., Ex. 1 (Proposed Am. Compl.) ¶¶ 29, 32-34.

3

The defendant's termination of the plaintiff was based on Rule 24 of the CBA, Compl. ¶ 34; Compl., Ex. H at 1; see also Pl.'s Mot., Ex. 1 (Proposed Am. Compl.) ¶ 34, which states the following concerning unauthorized absences: "Employees who are absent from work for ten (10) days without notifying the corporation shall be considered as having resigned from the service, unless the corporation is furnished satisfactory evidence that circumstances beyond their control prevented such notification," Compl. ¶ 29; see also Pl.'s Mot., Ex. 1 (Proposed Am. Compl.) ¶ 29. In the termination letter, the defendant stated:

> There has been no response or notification of your prolonged absence from work at Amtrak. In a letter sent to you on October 12, 2011, . . . you were instructed to notify the corporation for your absence. In the letter you were informed that failure to do so will invoke Rule 24 of the [CBA], and you will be considered as resigned from the corporation.
>
> This letter is official notification that you are now considered resigned . . . .

Compl., Ex. H at l; see also Pl.'s Mot., Ex. 1 (Proposed Am. Compl.), Ex. H at 1. According to the plaintiff, she received neither this letter nor the October 12, 2011 letter referenced therein. Compl. ¶¶ 33-34; see also Pl.'s Mot., Ex. 1 (Proposed Am. Compl.) ¶¶ 33-34. The plaintiff accuses the defendant of intentionally sending these letters to an incorrect mailing address because it "wanted to terminate [her] because of her race and sex . . . ." Compl. ¶ 36; see also Compl. ¶¶ 39-42, 45, 49-50, 56-59, 66; Pl.'s Mot., Ex. 1 (Proposed Am. Compl.) ¶¶ 36, 39-42, 71, 75-76, 82-85, 92. Consequently, the plaintiff filed her complaint against the defendant in this case, which she now seeks to amend to include breach of contract and promissory estoppel claims. Pl.'s Mot. at 1.

## II. STANDARD OF REVIEW

"A party may amend its pleading once as a matter of course" within twenty-one days following several designated events. Fed. R. Civ. P. 15(a)(1). However, after that time has

4

elapsed, the initial pleading may be amended "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).  While the court has sole discretion to grant or deny leave to amend, "[l]eave to amend a [pleading] should be freely given in the absence of undue delay, bad faith, undue prejudice to the opposing party, repeated failure to cure deficiencies, or futility."  Richardson v. United States, 193 F.3d 545, 548-49 (D.C. Cir. 1999) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).  The rationale for this perspective is that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [s]he ought to be afforded an opportunity to test [her] claim on the merits."  Foman, 371 U.S. at 182.  Nevertheless, the "court may properly deny a motion to amend if the amended pleading would not survive a motion to dismiss," i.e., if it is futile to amend.  In re Interbank Funding Corp. Sec. Litig., 629 F.3d 213, 218 (D.C. Cir. 2010); see also James Madison Ltd. v. Ludwig, 82 F.3d 1085, 1099 (D.C. Cir. 1996) ("Courts may deny a motion to amend a complaint as futile . . . if the proposed claim would not survive a motion to dismiss.").

### III.    ANALYSIS

#### A.    The Plaintiff's Proposed Breach of Contract Claim

The defendant contends that leave to amend the complaint would be futile because the breach of contract claim "is preempted by the Railway Labor Act," 45 U.S.C. § 151 (2012), as the claim "requires interpretation of [the] CBA."  Def.'s Opp'n at 2.  In response, the plaintiff does not contest the applicability of the Railway Labor Act ("RLA"); instead she relies on "exceptions" to the RLA that she contends render preemption inapplicable to this case.  Pl.'s Reply at 5.  The defendant has the better of this dispute.

The RLA "was enacted in an effort to promote stability in labor management relations within the railroad industry."  Air Line Pilots Ass'n, Int'l v. E. Air Lines, Inc., 701 F. Supp. 865,

872 (D.D.C. 1988) (citing 45 U.S.C. §§ 151-188 (1987)), aff'd, 889 F.2d 291 (D.C. Cir. 1989); see also Abdul-Qawiy v. Nat'l R.R. Passenger Corp., No. 04-cv-1030 (HHK), 2005 WL 3201271, at *3 (D.D.C. Oct. 25, 2005) (citing Atchison, Topeka & Santa Fe Ry. Co. v. Buell, 480 U.S. 557, 562 (1987)).  It "provides remedies for the resolution of employee disputes arising out of the interpretation of [a] collective bargaining agreement[] and requires all parties to 'exert every reasonable effort to make and maintain' [the] collectively[-]bargained agreement[], and to abide by the terms of the most recent agreement until all the dispute resolution procedures have been exhausted."  Air Line Pilots, 701 F. Supp. at 872 (quoting 45 U.S.C. § 152; then citing 45 U.S.C. §§ 155, 156, 160).  Where a dispute is "'arguably' . . . covered by the existing collective bargaining agreement,"[4] i.e., it "relates either to the meaning or proper application of a particular provision with reference to a specific situation," exhaustion is required.  Id. (first quoting Me. Cent. R.R. Co. v. United Transp. Union, 787 F.2d 780, 782 (1st Cir.), cert. denied, 479 U.S. 848 (1986); then quoting Elgin, Joliet, & E. Ry. Co. v. Burley, 325 U.S. 711, 727 (1945)).  Exhaustion occurs in the form of "a formal grievance process that culminates in binding arbitration by the National Railroad Adjustment Board" ("Adjustment Board"), id. (citing 45 U.S.C. § 153); see also Abdul-Qawiy, 2005 WL 3201271, at *3 (same), or alternatively, by a special board of adjustment, commonly known as a public law board, see, e.g., CSX Transp., Inc. v. Nat'l Mediation Bd., No. 04-cv-0611 (RWR), 2005 WL 2297554, at *5 (D.D.C. Aug. 29, 2005) ("As an alternative to submitting the dispute to the [Adjustment Board], the parties can agree to establish a [public law board] and submit the dispute to that [board] for resolution . . . ."

---

[4] This is referred to as a "minor dispute."  Air Line Pilots, 701 F. Supp. at 872.  "The RLA also provides for the resolution of 'major disputes,' i.e., disputes concerning the formation or change of collective bargaining agreements. This case does not involve 'major disputes.'"  CSX Transp., Inc. v. Nat'l Mediation Bd., No. 04-cv-0611 (RWR), 2005 WL 2297554, at *5 n.2 (D.D.C. Aug. 29, 2005) (quoting 45 U.S.C. § 155), dismissed sub nom. CSX Trans., Inc. v. Nat'l Mediation Bd., No. 05-5400, 2005 WL 3839290 (D.C. Cir. Dec. 8, 2005).

6

(citing 45 U.S.C. § 153)), dismissed sub nom. CSX Trans., Inc. v. Nat'l Mediation Bd., No. 05-5400, 2005 WL 3839290 (D.C. Cir. Dec. 8, 2005).[5]

Here, the plaintiff did not institute a formal grievance process that resulted in binding arbitration before either the Adjustment Board or a public law board. She merely contacted her union representatives, complaining about her termination by the defendant. See Pl.'s Suppl. Br., Ex. 1 (February 28, 2012 Dwayne Bateman Facsimile ("Feb. 28, 2012 Fax")) at 2-3; Pl.'s Suppl. Br., Ex. 2 (April 5, 2016 Dwayne Bateman Email ("Apr. 5, 2016 Email")) at 1 (explaining that none of the union representatives contacted by the plaintiff "sit [on] any [b]oards," they just "present arguments to them"). The plaintiff, therefore, has not exhausted her administrative remedies.

Nevertheless, there are "four exceptions" excusing a failure to exhaust administrative remedies. Abdul-Qawiy, 2005 WL 3201271, at *4. In other words, preemption is inapplicable under the RLA:

> (1) when the employer repudiates the private grievance machinery, (2) when resort to administrative remedies would be futile, (3) when the employer is joined in a duty of fair representation claim against the union, and (4) when, because of a breach of the duty of fair representation by the union, the employee loses the right to grieve before the [Adjustment] Board.

Id. (citations omitted).[6] The plaintiff invokes "[t]wo of the four exceptions . . . in [this] case . . . ." Pl.'s Reply at 6. She argues that the defendant "repudiated the grievance machinery," id., and

---

[5] A special adjustment board or a public law board can be convened as an alternative to the Adjustment Board, so long as a relevant collective bargaining agreement provides for such an option. See, e.g., Pl.'s Suppl. Br. at 8 (citing 45 U.S.C. § 153); Def.'s Suppl. Mem. at 4 & n.1 (citing same).

[6] As noted in Abdul-Qawiy, "the [District of Columbia] Circuit has never explicitly recognized all of these four exceptions." 2005 WL 3201271, at *4 n.4. Nevertheless, "[t]he [C]ourt will assume arguendo that they are valid exceptions and proceed to determine whether any apply to . . . [this] case." Id. Notably, both parties agree that the exceptions are relevant to this case. See Def.'s Opp'n at 2 n.1; Pl.'s Reply at 6. And "[b]ecause the [C]ourt ultimately concludes that none are applicable, [it] need not address whether these exceptions should be recognized in this jurisdiction." Abdul-Qawiy, 2005 WL 3201271, at *4 n.4.

7

that "resort to administrative remedies" would have been "futile," id. at 7. Neither exception applies to the circumstances in this case.

First, like Abdul-Qawiy, despite the allegation that her union refused to handle her dispute with the defendant, see Pl.'s Mot., Ex. 1 (Proposed Am. Compl.) ¶¶ 46-48, the plaintiff "never alleges that [s]he actually filed a grievance with the [Adjustment] Board on [her] own behalf," Abdul-Qawiy, 2005 WL 3201271, at *4. "Because [she] had the right under the [RLA] to do so and opted not to, the [C]ourt cannot conclude that any failure of the grievance machinery was the result of [the defendant's] actions." Id. Second, and relatedly, the plaintiff has not demonstrated that it would have been futile to instigate the grievance procedures outlined in the RLA. In other words, she has not demonstrated that the Adjustment Board would "have refused to provide the relief that [she] seeks." Id. at *5; see also Emswiler v. CSX Transp., Inc., 691 F.3d 782, 791 (6th Cir. 2012) (requiring under the RLA "a clear and positive showing of futility before excusing a failure to exhaust" because "[i]t is insufficient to show that a party subjectively thought procedures would be futile"). The allegation that her union was of the opinion that neither the Adjustment Board nor a public law board[7] would have afforded her the relief she seeks is insufficient as a matter of law to demonstrate futility. See Evans v. Nw. Airlines, Inc., 29 F.3d 438, 441 (8th Cir. 1994) ("Although [the plaintiff] may have received erroneous advice from the local [u]nion representative, he was not prevented from filing a formal grievance."); Bautista v. Pan Am. World Airlines, Inc., 828 F.2d 546, 552 (9th Cir. 1987) ("The mere fact that the union disagrees with the dismissed employees on the merits of their wrongful discharge claim does not mean that resort to the Adjustment Board would be 'absolutely futile' . . . ." (citation omitted)); Emswiler v. CSX Transp., Inc., No. 09-cv-1004, 2011 WL

---

[7] The plaintiff has not explained why convening a public law board to arbitrate her claims against the defendant would have been futile, let alone attempt to convene such a board.

8

2135053, at *5 (S.D. Ohio Apr. 27, 2011) ("[O]ther courts have held that, because the RLA permits individual employees to pursue grievances before the [Adjustment Board], a union's failure to advance claims on an employee's behalf does not render resort to administrative remedies futile." (citing Rader v. United Transp. Union, 718 F.2d 1012, 1014 (11th Cir. 1983))), aff'd, 691 F.3d 782 (6th Cir. 2012). To the extent that the plaintiff missed the deadline to file a grievance pursuant to the CBA because of the defendant's alleged scheme to knowingly send her termination letter to an incorrect mailing address, she has not shown that an equitable tolling argument before the Adjustment Board would have been futile.[8] See Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment, Cent. Region, 558 U.S. 67, 75 n.4 (2009) (acknowledging that an equitable tolling claim can be considered by the Adjustment Board).

      Therefore, because neither of the plaintiff's proffered exceptions to preemption under the RLA applies, the Court concludes that leave to amend the complaint to add a breach of contract claim would be futile because the Court would not have subject matter jurisdiction over the claim. See Abdul-Qawiy, 2005 WL 3201271, at *6 ("Absent a showing that an exception applies, resolution of . . . [the] breach of contract claim lies within the jurisdiction of the Adjustment Board. Accordingly, dismissal of this claim is appropriate."); see also McWilliams v. CSX Corp., No. 88-cv-1425, 1988 WL 80045, at *1 (D.D.C. July 26, 1988) ("[The] defendant contends that this Court lacks subject matter jurisdiction because [the] plaintiff has failed to fully exhaust his statutory grievance remedies under the Railway Labor Act. The complaint filed in this case also provides no indication that plaintiff has taken any action to exhaust his administrative remedies. In view of this failure to exhaust his administrative remedies, the Court is constrained to dismiss this case for lack of subject matter jurisdiction.").

---

[8] Likewise, there is no explanation that this argument would have been futile before a public law board.

### B.     The Plaintiff's Proposed Promissory Estoppel Claim

The defendant also contends that leave to amend the complaint to add a promissory estoppel claim would be futile because the claim is barred by the existence of the CBA, which governs the parties' employment relationship.  See Def.'s Opp'n at 4-5.  But the plaintiff insists that her promissory estoppel claim is not derived from the CBA; rather, she contends that the claim is "center[ed] on the [alleged] verbal promises [of indefinite leave of absence] impliedly made to her when [when she spoke to] her superiors . . . [about] her ill-health . . . and need for . . . [the absence]."  Pl.'s Reply at 18.  The plaintiff's insistence is misplaced, however.

The Court can only permit leave to amend the complaint to add the promissory estoppel claim if it can be plausibly inferred that there was: (1) a promise; (2) a reasonable reliance upon that promise; and (3) that reliance led "to the detriment of the promisee."  Simard v. Resolution Trust Corp., 639 A.2d 540, 552 (D.C. 1994) (citing Bender v. Design Store Corp., 404 A.2d 194, 196 (D.C. 1979)).  "The promissory estoppel theory is an 'inherently equitable doctrine,' that 'may be invoked only when injustice otherwise would not be avoidable[.]'"  Osseiran v. Int'l Fin. Corp., 889 F. Supp. 2d 30, 35 (D.D.C. 2012) (first quoting Moss v. Stockard, 580 A.2d 1011, 1035 (D.C. 1990); then quoting Kauffman v. Int'l Bhd. of Teamsters, 950 A.2d 44, 49 n.7 (D.C. 2008)).  "District of Columbia law presupposes that an express, enforceable contract is absent when the doctrine of promissory estoppel is applied."  Bldg. Servs. Co. v. Nat'l R.R. Passenger Corp., 305 F. Supp. 2d 85, 95 (D.D.C. 2004) (Walton, J.) (citing Int'l Bus. Machs. Corp. v. Medlantic Healthcare Grp., 708 F. Supp. 417, 424 (D.D.C. 1989), dismissed sub nom. Bldg. Servs. Co. v. Nat'l R.R. Passenger Corp., No. 04-7031, 2004 WL 1368855 (D.C. Cir. June 17, 2004)); see also Parnigoni v. St. Columba's Nursery Sch., 681 F. Supp. 2d 1, 26 (D.D.C. 2010) (Walton, J.) ("District of Columbia law is clear that promissory estoppel applies to

arrangements only where no written agreements exist." (citing Osseiran v. Int'l Fin. Corp., 498 F. Supp. 2d 139, 147 (D.D.C. 2007), aff'd, 552 F.3d 836 (D.C. Cir. 2009))). "In failing to allow a promissory estoppel claim where there is an express agreement, courts are primarily concerned about preventing plaintiffs to have 'a second bite at the apple' in the event they are unable to maintain a breach of contract claim." Parnigoni, 681 F. Supp. 2d at 26 (quoting Daisley v. Riggs Bank, N.A., 372 F. Supp. 2d 61, 71 (D.D.C. 2005)).

Here, the plaintiff has alleged that there is a CBA that governs, inter alia, the parties' conduct with respect to leaves of absence. See Compl. ¶¶ 5, 12, 29, 50-51; see also Joint Submission of CBA at 4-6.[9] Having pleaded the existence of an express, enforceable contract, the plaintiff cannot now be heard on her promissory estoppel claim.[10]

## IV. CONCLUSION

In short, the plaintiff's motion is denied because the breach of contract claim is preempted by the RLA and the promissory estoppel claim is barred by the acknowledged existence of the CBA.

---

[9] The Court can consider portions of the CBA in resolving the plaintiff's motion to amend her complaint because they were incorporated by reference into the plaintiff's complaint. See, e.g., EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997) ("In determining whether a complaint fails to state a claim, we may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which we may take judicial notice." (footnote omitted)).

[10] Even if the Court disregarded the existence of the CBA, the purported oral approvals for indefinite leave were not sufficiently definite promises and any reliance on them would be unreasonable. This is so because the alleged oral promises to allow the plaintiff to take leave for an indefinite period of time is inherently indefinite. See, e.g., Osseiran, 889 F. Supp. 2d at 35 ("However, because reliance on an indefinite promise is unreasonable, a promissory estoppel claim must rest on 'a promise with definite terms on which the promisor would expect the promisee to rely.'" (quoting In re U.S. Office Prods. Co. Sec. Litig., 251 F. Supp. 2d 58, 73 (D.D.C. 2003))). However, even assuming these alleged oral promises were sufficiently definite to support a promissory estoppel claim, the Court nevertheless finds that the plaintiff's reliance upon them was unreasonable, especially where she departed from her previous course of conduct of submitting formal, written requests for a leave of absence. See Morauer & Hartzell, Inc. v. Local Union No. 77, Int'l Union of Operating Eng'rs, No. 73-cv-1275, 1974 WL 1201, at *5 (D.D.C. Nov. 27, 1974) ("[T]he alleged promise was made with almost a complete lack of formality, further making unreasonable such reliance by plaintiff.").

**SO ORDERED** on this 21st day of April, 2016.[11]

REGGIE B. WALTON
United States District Judge

---

[11] The Court has contemporaneously issued an Order consistent with this Memorandum Opinion.