UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CHERYL RENEE SAID, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 15-1289 (RBW) |
| NATIONAL RAILROAD PASSENGER CORPORATION, | ) ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

The plaintiff, Cheryl Renee Said, initiated this civil action against the defendant, the National Railroad Passenger Corporation ("Amtrak"), alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e to 2000e-17 (2012), the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 ("§ 1981"), the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1401.01 to 1404.04 (2012), the Due Process Clause of the Fifth Amendment to the United States Constitution, District of Columbia public policy, and District of Columbia common law. See Complaint ("Compl.") ¶¶ 3, 64. On July 10, 2018, the Court granted in part and denied in part Amtrak's motion for summary judgment (the "July 10, 2018 Memorandum Opinion"). See Said v. Nat'l R.R. Passenger Corp. (Said III), 317 F. Supp. 3d 304, 311, 343 (D.D.C. 2018) (Walton, J.). Currently before the Court is the Defendant's Motion for Reconsideration of the Court's Order Denying, in Part, Defendant's Motion for Summary Judgment ("Def.'s Mot."). The Court held oral argument on Amtrak's motion on June 12, 2019. Upon careful consideration of the parties' oral argument and written

submissions,[1] the Court concludes that it must grant Amtrak's motion for reconsideration.

## I. BACKGROUND

The Court discussed the factual background and statutory authority pertinent to this case in the July 10, 2018 Memorandum Opinion, see Said III, 317 F. Supp. 3d at 311–17, and will not reiterate those facts and authorities again here. In that opinion, the Court denied the defendant's motion for summary judgment on the plaintiff's claims of race discrimination under § 1981 (Count II) and race and gender discrimination under the DCHRA (Count III) (collectively, the "race and gender discrimination claims"), but granted Amtrak's motion for summary judgment on the plaintiff's remaining claims. See id. at 343. The plaintiff's race and gender discrimination claims assert that Amtrak unlawfully terminated her employment because of her race and gender. See id. at 313, 317. In its summary judgment motion, Amtrak denied that it discriminated against the plaintiff, asserting to the contrary that it terminated the plaintiff for legitimate, nondiscriminatory reasons pursuant to the Collective Bargaining Agreement ("CBA")

---

[1] In addition to the filings already identified, the Court also considered the following submissions in rendering its decision: (1) the Defendant's Motion for Summary Judgment ("Def.'s Summ. J. Mot."); (2) the Defendant's Memorandum of Points and Authorities in Support of Its Motion for Summary Judgment ("Def.'s Summ. J. Mem."); (3) the Defendant's Statement of Undisputed Material Facts in Support of Its Motion for Summary Judgment ("Def.'s Facts"); (4) the Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Summ. J. Opp'n"); (5) the Plaintiff's Statement of Disputed Genuine Material Facts in Dispute in Support of Her Opposition to Defendant's Motion for Summary Judgment; (6) the Defendant's Reply Memorandum of Points and Authorities in Support of Its Motion for Summary Judgment; (7) the Defendant's Memorandum of Points and Authorities in Support of Its Motion for Reconsideration of the Court's Order Denying, in Part, Defendant's Motion for Summary Judgment ("Def.'s Mem."); (8) the [P]laintiff's Memorandum in Opposition to Defendant's Motion for Reconsideration ("Pl.'s Opp'n"); (9) the Defendant's Reply Memorandum in Support of Its Motion for Reconsideration of the Court's Order Denying, in Part, Defendant's Motion for Summary Judgment ("Def.'s Reply"); (10) the defendant's Notice of Clarification ("Def.'s Clarification Not."); and (11) the Plaintiff's Response to Defendant's Notice of Clarification ("Pl.'s Clarification Resp.").

between Amtrak and the plaintiff's Union. See Def.'s Summ. J. Mem. at 6. Specifically, Amtrak asserted:

> [The] [p]laintiff was terminated pursuant to Rule 24 of the [ ] CBA [('CBA Rule 24')] after failing to communicate with Amtrak during her extended leave of absence, failing to advise Amtrak of the reason she continued to be on leave or her expected return date, and failing to respond to correspondence from Amtrak regarding the same.

Id. CBA Rule 24 states that "[e]mployees who are absent from work for ten [ ] days without notifying [Amtrak] shall be considered as having resigned from the service, unless [Amtrak] is furnished satisfactory evidence that circumstances beyond their control prevented such notification." Said III, 317 F. Supp. 3d at 326 (citation omitted).

Upon considering Amtrak's proffered reasons for the plaintiff's termination and the evidence in the record, the Court concluded:

> [T]he plaintiff has identified facts in the record sufficient to cast doubt on two of [Amtrak's] proffered reasons for her termination—that the plaintiff failed to communicate with [Amtrak] during her extended leave of absence and failed to notify [Amtrak] of the reason for her extended leave of absence—and to make a reasonable jury "quite suspicious" of [Amtrak's] application of [CBA] Rule 24 to the plaintiff and the circumstances surrounding [Amtrak's CBA] Rule 24 correspondence[.]

Id. at 334 (internal citations omitted). The Court further concluded that this evidence, combined with "the plaintiff's testimony that [one of her supervisors, Patrick] Ryan[,] made a racially discriminatory statement to her of the type that [the District of Columbia] Circuit has warned district courts not to ignore, . . . [wa]s sufficient to allow the plaintiff to survive summary judgment." Id. (internal citation omitted).

On July 30, 2018, Amtrak filed its motion for reconsideration, see Def.'s Mot. at 1, which seeks reconsideration of the Court's July 10, 2018 Memorandum Opinion pursuant to Federal Rule of Civil Procedure 54(b), see Def.'s Mem. at 1. That motion is the subject of this Memorandum Opinion.

3

## II. STANDARD

Under Federal Rule of Civil Procedure 54(b), any order or decision that does not constitute a final judgment "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Although "district court[s] ha[ve] 'broad discretion to hear a motion for reconsideration brought under Rule 54(b),'" Univ. of Colo. Health at Mem'l Hosp. v. Burwell, 164 F. Supp. 3d 56, 62 (D.D.C. 2016) (quoting Isse v. Am. Univ., 544 F. Supp. 2d 25, 29 (D.D.C. 2008)), district courts grant motions for reconsideration of interlocutory orders only "as justice requires," Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc., 630 F.3d 217, 227 (D.C. Cir. 2011) (quoting Greene v. Union Mut. Life Ins. Co. of Am., 764 F.2d 19, 22–23 (1st Cir. 1985)).

In determining whether "justice requires" reversal of a prior interlocutory order, courts assess circumstances such as "whether the court 'patently' misunderstood the parties, made a decision beyond the adversarial issues presented, made an error in failing to consider controlling decisions or data, or whether a controlling or significant change in the law has occurred." In Def. of Animals v. Nat'l Insts. of Health, 543 F. Supp. 2d 70, 75 (D.D.C. 2008) (quoting Singh v. George Wash. Univ., 383 F. Supp. 2d 99, 101 (D.D.C. 2005)); see Davis v. Joseph J. Magnolia, Inc., 893 F. Supp. 2d 165, 168 (D.D.C. 2012) ("[A] motion for reconsideration is discretionary and should not be granted unless the movant presents either newly discovered evidence or errors of law or fact that need correction."). "The burden is on the moving party to show that reconsideration is appropriate and that harm or injustice would result if reconsideration were denied." United States ex rel. Westrick v. Second Chance Body Armor, Inc., 893 F. Supp. 2d 258,

4

268 (D.D.C. 2012) (citing Husayn v. Gates, 588 F. Supp. 2d 7, 10 (D.D.C. 2008)). And, motions for reconsideration are not vehicles for either reasserting arguments previously raised and rejected by the court or presenting arguments that should have been raised previously with the court. See Estate of Gaither ex rel. Gaither v. District of Columbia, 771 F. Supp. 2d 5, 10 & n.4 (D.D.C. 2011).

### III.     ANALYSIS

Amtrak urges the Court to reconsider its denial of Amtrak's motion for summary judgment on the plaintiff's race and gender discrimination claims because "[t]he Court's basis for denying [summary judgment] . . . raises issues of preemption and preclusion under the Railway Labor Act ('RLA'), 45 U.S.C. § 151, et seq." Def.'s Mem. at 1. Specifically, Amtrak argues that the Court's conclusion "requires interpretation of [the] . . . []CBA[,]" id., and that the "mandatory arbitral mechanism" contained in the RLA "prohibits the interpretation of a CBA in a judicial forum," id. at 2. Amtrak further argues that "[i]f the Court accepts Amtrak's interpretation of the CBA and its customary policies and procedures, then insufficient evidence of pretext exists for a reasonable jury to find that Amtrak's proffered reason for [the] [p]laintiff's termination was pretext for discrimination." Id. at 9.[2]

The plaintiff responds that Amtrak "ha[s] failed to carry its burden" to show that reconsideration is appropriate under Rule 54(b). Pl.'s Opp'n at 3. Additionally, she asserts that, even if reconsideration were appropriate, "[a]djudicating [her] § 1981 and

---

[2] Additionally, Amtrak argues that, apart from being entitled to summary judgment pursuant to the RLA, the Court must also grant summary judgment to Amtrak on the plaintiff's gender discrimination claim because the plaintiff "has offered no evidence of any kind of gender animus, and [ ] Ryan's comment of 'you all look alike' has no connotation of gender bias." Id. at 10. Because the Court concludes that it must grant Amtrak summary judgment on the plaintiff's gender discrimination claim on other grounds, the Court need not address this argument.

5

DCHRA [c]laims[] does not require interpretation of a CBA[,] [a]nd as such, the Court's ruling raises no issues of [p]reemption/[p]reclusion." Id. at 8. The Court first addresses whether reconsideration is appropriate under Rule 54(b) and then turns to whether Amtrak is correct that the plaintiff's race and gender discrimination claims are barred by the RLA.

> A. **Whether Reconsideration of the Court's July 10, 2018 Decision Is Appropriate**

Amtrak asserts that the Court committed legal error by "interpret[ing] the CBA" in violation of the RLA and controlling decisions interpreting the RLA. Def.'s Mem. at 1. It argues that, as a result, "the RLA has come into play and either preempts or precludes [the] [p]laintiff's claims entirely or functions to exclude evidence that the Court relied upon in denying Amtrak's motion" (the "RLA preemption/preclusion argument").[3] Id. Although Amtrak concedes that it did not raise its RLA preemption/preclusion argument in its summary judgment motion, it claims that it did not do so "because[] . . . [its] interpretation of the CBA was not challenged, [and thus,] the RLA was not at issue." Id. The plaintiff responds that Amtrak has "[f]ailed to [i]dentify [a]ny [v]alid [b]asis [f]or [r]econsideration," Pl.'s Opp'n at 3, because it, inter alia, "does not contend[] . . . that the Court's conclusion . . . was clear error of law or fact," id. at 4, or "that the Court[] failed to consider any controlling decision or law," id. at 5, and it "cannot use its [m]otion for [r]econsideration as a vehicle . . . for presenting . . . arguments that it could have advanced earlier," id. at 7.

---

[3] The RLA "preempts" state law claims but "precludes" federal law claims. See Brown v. Ill. Cent. R.R. Co., 254 F.3d 654, 661 (7th Cir. 2001). Because the plaintiff's race and gender discrimination claims involve both state and federal law, preemption and preclusion are both at issue here.

6

As an initial matter, the Court agrees with the plaintiff that Amtrak could have raised its RLA preemption/preclusion argument in its summary judgment briefing. Amtrak is simply incorrect that its "interpretation of the CBA was not challenged" until the Court brought it "into play." Def.'s Mem. at 1. The plaintiff challenged Amtrak's application of CBA Rule 24 to her situation in both her Complaint, see, e.g., Compl. ¶ 30 (asserting that CBA "Rule 24 [ ] applies or should be applied against an employee who has been absent from work for ten days without notifying the [defendant]"); id. ¶ 34 (alleging that "[s]he informed her employer of her condition and her whereabouts"); id. ¶ 44 (asserting that "Ryan had no other legitimate reason for terminating [her], but for his animus against her, based on her race and sex"), and her opposition to Amtrak's motion for summary judgment, see, e.g., Pl.'s Summ. J. Opp'n at 4 (arguing that Amtrak "had no legitimate reason to invoke Rule 24 of the CBA against [her]"). And, as explained in further detail below, see Part III.B, infra, the plaintiff's challenge necessarily implicates how Amtrak interprets the language of CBA Rule 24. Thus, the Court did not first bring "into play" Amtrak's interpretation and application of the CBA; rather, the plaintiff did. Thus, because Amtrak was on notice that the plaintiff sought to put at issue Amtrak's interpretation and application of the CBA, it should have raised its RLA preemption/preclusion argument in its summary judgment briefing and its failure to do so weighs against the Court considering the issue at this time. See Estate of Gaither ex rel. Gaither a, 771 F. Supp. 2d at 10 & n.4.

Nonetheless, the Court finds it appropriate for several reasons to consider Amtrak's RLA preemption/preclusion argument. First, as Amtrak correctly notes, see Def.'s Mem. at 3, whether the RLA preempts or precludes the plaintiff's race and gender

discrimination claims is a jurisdictional issue, cf. Oakey v. U.S. Airways Pilots Disability Income Plan, 723 F.3d 227, 234 (D.C. Cir. 2013) (recognizing that RLA § 204 regarding disputes with air carriers, virtually identical to RLA § 3 for rail carriers, "is jurisdictional regarding its [mandatory arbitral] requirement"), and thus, may be considered by the Court at any time irrespective of whether the requirements of Rule 54(b) are satisfied, see Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Second, courts have recognized that reconsideration is appropriate under Rule 54(b) "when [a] movant demonstrates[] . . . a clear error in the [Court's] order," Murphy v. Exec. Office for U.S. Attorneys, 11 F. Supp. 3d 7, 8 (D.D.C. 2014), aff'd, 789 F.3d 204 (D.C. Cir. 2015), such as a "fail[ure] to consider controlling decisions," In Def. of Animals, 543 F. Supp. 2d at 75. Here, the Court finds it appropriate to consider Amtrak's argument because Amtrak asserts that the Court committed legal error by failing to consider the RLA and the controlling decisions of the Supreme Court and this Circuit applying the RLA preemption and preclusion rule. See Def.'s Mem. at 2 (arguing that "the Court failed to consider that the RLA prohibits the interpretation of a CBA in a judicial forum" and citing as support Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246 (1994), and Consolidated Rail Corp. v. Ry. Labor Exec. Ass'n, 491 U.S. 299 (1989)).

      The plaintiff's counterarguments are unavailing. The plaintiff suggests that reconsideration is inappropriate because the Court did in fact consider RLA preemption and preclusion in its July 10, 2018 Memorandum Opinion, arguing that "[i]t makes no logical sense . . . that the same Court that . . . [previously] held [the plaintiff's proposed breach of contract] claim was preempted by the RLA . . . somehow failed to consider . . .

[the] RLA" on summary judgment, Pl.'s Opp'n at 6.  Although the plaintiff is correct that the Court previously considered the RLA in denying the plaintiff's motion to amend her complaint to add a breach of contract claim, see Said v. Nat'l R.R. Passenger Corp. (Said I), 183 F. Supp. 3d 71, 75–78 (D.D.C. 2016) (Walton, J.); see also Said v. Nat'l R.R. Passenger Corp. (Said II), 191 F. Supp. 3d 55, 57–58 (D.D.C. 2016) (Walton, J.) (denying the plaintiff's motion for reconsideration of the Court's decision denying her motion to amend), the Court's July 10, 2018 Memorandum Opinion clearly demonstrates that the Court did not consider RLA preemption or preclusion in addressing the plaintiff's race and gender discrimination claims at the summary judgment stage, see generally Said III, 317 F. Supp. 3d 304.  Additionally, the plaintiff argues that reconsideration is inappropriate because Amtrak "has failed to identify any harm or injustice that would result if the Court does not reconsider its decision[] or show that extraordinary circumstances exist[] that warrant[] a change in the Court's decision."  Pl.'s Opp'n at 3.  However, to the extent that Amtrak is correct that the RLA preempts or precludes the plaintiff's race and gender discrimination claims, or at least renders some evidence regarding those claims inadmissible, harm would result from the Court's denial of reconsideration because the Court's decision in its July 10, 2018 Memorandum Opinion would conflict with established principles of law.  Cf. Univ. of Colo. Health at Mem'l Hosp., 164 F. Supp. 3d at 68–69 (concluding that "harm or injustice would necessarily follow if the [c]ourt denied [a] motion" for reconsideration in part because denial "would contravene [a] cardinal principle" of judicial review of administrative action).  Thus, the plaintiff's counterarguments do not alter the Court's conclusion that reconsideration of its July 10, 2018 Memorandum Opinion is appropriate, to the extent that Amtrak is correct

9

that the RLA bars the plaintiff's race and gender discrimination claims or the Court's consideration of certain evidence regarding those claims in deciding Amtrak's motion for summary judgment.

Accordingly, the Court finds it appropriate to consider Amtrak's RLA preemption/preclusion argument because the applicability of preemption or preclusion is a jurisdictional issue that may be considered by the Court at any stage of a proceeding, or alternatively, because Amtrak asserts that the Court committed clear legal error by failing to consider the RLA and controlling decisions interpreting it.

### B. Whether the RLA Bars the Plaintiff's Race and Gender Discrimination Claims

Amtrak argues that "the RLA . . . either preempts or precludes [the] [p]laintiff's claims entirely or functions to exclude evidence that the Court relied upon in denying Amtrak's motion." Def.'s Mem. at 1. According to Amtrak, "neither the Court nor the jury may engage in any interpretation of the CBA[] . . . [because,] [u]nder the RLA, interpretation of a CBA and the customary procedures used in enforcing it may be undertaken only by a Public Law Board." Id. at 5. It therefore argues that

> [i]f the Court accepts[,] [as it is required to do,] Amtrak's interpretation of the CBA and its customary policies and procedures, then insufficient evidence of pretext exists for a reasonable jury to find that Amtrak's proffered reason for [the] [p]laintiff's termination was pretext for discrimination, making summary judgment appropriate on [the] [p]laintiff's [§] 1981 and DCHRA claims.

Id. at 9. The plaintiff responds that "[a]djudicating [her] § 1981 and DCHRA [c]laims[] does not require interpretation of [the] CBA[,] [a]nd as such, the Court's ruling raises no issues of [p]reemption/[p]reclusion." Pl.'s Opp'n at 8.

As the Court explained in Said I, the RLA "was enacted in an effort to promote stability in labor management relations within the railroad industry." Air Line Pilots

Ass'n, Int'l v. E. Air Lines, Inc., 701 F. Supp. 865, 872 (D.D.C. 1988) (citing 45 U.S.C. §§ 151–88 (1987)), aff'd, 889 F.2d 291 (D.C. Cir. 1989). To that end, "the RLA establishes a mandatory arbitral mechanism for 'the prompt and orderly settlement' of two classes of disputes—'major disputes' and 'minor disputes.'" Brown v. Ill. Cent. R.R. Co., 254 F.3d 654, 658 (7th Cir. 2001). Major disputes "relate to the formation of collective bargaining agreements or efforts to secure them." Hawaiian Airlines, 512 U.S. at 252. Minor disputes, however, are disputes "growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." 45 U.S.C. § 153; see Hawaiian Airlines, 512 U.S. at 256 ("We have defined minor disputes as those involving the interpretation or application of existing labor agreements.").

Minor disputes "must be resolved [ ] through the RLA mechanisms, including the carrier's internal dispute-resolution processes and an adjustment board established by the employer and the unions." Hawaiian Airlines, 512 U.S. at 256. "Thus, a determination that [a plaintiff's claims] constitute a minor dispute would pre-empt [her] [ ] action[.]" Id. Specifically, a "claim will be preempted if it cannot be adjudicated without interpreting the CBA, or if it can be 'conclusively resolved' by interpreting the CBA." Brown, 254 F.3d at 658 (quoting Hawaiian Airlines, 512 U.S. at 261–62). However, "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted," Hawaiian Airlines, 512 U.S. at 260 (quoting Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 211 (1985)); see Miglio v. United Airlines, No. C13-573RAJ, 2014 WL 1089285, at *5 (W.D. Wash. Mar. 17, 2014) ("That a CBA bears on the resolution of a [ ] claim is insufficient to preempt the claim, it must

11

be necessary to resolve competing interpretations of the CBA."), and "'purely factual questions' about an employee's conduct or an employer's conduct and motives do not 'requir[e] a court to interpret any term of a collective-bargaining agreement,'" Hawaiian Airlines, 512 U.S. at 261 (quoting Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 407 (1988)).

Additionally, some courts have "drawn on the [RLA] preemption doctrine as an evidentiary guide." Gilmore v. Union Pac. R.R. Co., No. S-09-2180 KJM DAD, 2012 WL 3205233, at *8 (E.D. Cal. Aug. 2, 2012). In those cases, the courts did "not dismiss[] the [plaintiff's] claims as preempted but rather ruled that evidence of pretext that[] . . . [implicated the CBA] [wa]s not relevant because of the preemption doctrine." Id. (ruling inadmissible "evidence of pretext that, on the facts of th[e] case, constitute[d] a collateral attack on the [defendant's] hearing procedures" because "consider[ing] . . . [that evidence would] require an interpretation of the relevant portions of the CBA, written or not"); cf. Kemp v. CSX Transp., Inc., 993 F. Supp. 2d 197, 216–17 (N.D.N.Y. 2014) (rejecting as "improper" an employee's "challenge[] [to] the validity of [the] defendant's determination that he technically violated [a] provision of [his] collective bargaining agreement," but allowing the employee's disparate treatment claim to proceed based on "the circumstances surrounding [the] defendant's offer of reinstatement").

As an initial matter, the Court acknowledges that the plaintiff's claims seek "to enforce rights that are independent of the CBA," Hawaiian Airlines, 512 U.S. at 256, namely, the right not to be discriminated against by an employer as prescribed by federal and state laws, see id. at 258 (recognizing that "a state-law obligation not to fire [an employee] in violation of public policy or in retaliation for whistle-blowing" was

12

"[w]holly apart from any provision of the CBA"). Thus, the plaintiff's claims are not preempted or precluded by virtue of the nature of the right asserted.

Nevertheless, the Court concludes that the RLA bars it from considering much of the evidence that it previously concluded a reasonable jury could rely upon in finding for the plaintiff. As already explained, the Court concluded that a reasonable jury could rely upon on an alleged discriminatory statement by Ryan to the plaintiff, see Said III, 317 F. Supp. 3d at 322, as well as various evidence challenging Amtrak's proffered reasons for the plaintiff's termination, see id. at 325–26. The plaintiff's evidence of pretext included evidence suggesting that "the plaintiff did not 'fail[] to communicate with Amtrak during her extended leave of absence,'" id. at 327, and did not "fail[] to advise Amtrak of the reason she continued to be on leave," id. at 328, which the Court found could lead a reasonable juror to conclude that "the plaintiff's conduct did not violate the letter of [CBA] Rule 24," id. at 330, as well as evidence suggesting that "the circumstances surrounding [Amtrak's CBA] Rule 24 correspondence" were "quite suspicious," id. at 334. The Court concluded that "all of this evidence, taken together, [wa]s sufficient to allow the plaintiff to survive summary judgment." Id. at 334.

However, the evidence proffered by the plaintiff challenging Amtrak's findings that she did not communicate with Amtrak and did not notify Amtrak of the reasons for her absence clearly takes issue with Amtrak's interpretation of CBA Rule 24 and its determination that she violated that Rule. As already explained, CBA Rule 24 governs when an employee is "absent from work . . . without notifying" Amtrak. Said III, 317 F. Supp. 3d at 326 (emphasis added). So, to evaluate whether the plaintiff is correct that she did not violate CBA Rule 24 because she sufficiently communicated with and notified

13

Amtrak, a jury would have to interpret CBA Rule 24 to determine the meaning of its requirement that an employee "notify[]" Amtrak. However, permitting such an interpretation would violate the RLA, which requires that "[a]ny controversies regarding the interpretation or application of [a] collective bargaining agreement must be resolved pursuant to the [RLA]" by a Public Law Board. Kemp, 993 F. Supp. 2d at 216 n.16 (concluding that a plaintiff's "challenge[] [to] the validity of [the] defendant's determination that he technically violated [a] provision of [his] collective bargaining agreement . . . [wa]s improper"). Thus, the Court erred by determining that a reasonable jury could rely on the plaintiff's proffered evidence to conclude that "the plaintiff's conduct did not violate the letter of [CBA] Rule 24." Said III, 317 F. Supp. 3d at 330.

Additionally, the Court must also conclude that the RLA prevents it from considering the plaintiff's evidence of "the circumstances surrounding [Amtrak's CBA] Rule 24 correspondence," id. at 334, specifically, "some, albeit very little, evidence that Ryan knew [the plaintiff's] correct address at the time he sent her [CBA] Rule 24 correspondence," id. at 333–34, and evidence that "when the [CBA] Rule 24 notification letter was returned as undeliverable, 'Ryan . . . did not use the phone and call [the plaintiff],'" even though "just six months before . . . , [he] 'called [the] [p]laintiff on her phone (the number of which did not change when she moved)' . . . regarding her life insurance claim," id. at 333. The plaintiff takes the position that a jury may infer from this evidence that Ryan intentionally sent the CBA Rule 24 correspondence to an address he knew was incorrect and did not contact her by telephone to notify her of her CBA Rule 24 obligations or to determine her correct address "because he really did not want to reach her." Pl.'s Clarification Resp. at 2 ("Ryan could have called [the plaintiff], if he

14

genuinely wanted to reach her or did not know where [she was] or why she was not at work for so long, but he chose not to call her, because he really did not want to reach her."). The defendant responds that Ryan "followed [Amtrak's] customary practices/procedures for contacting and terminating absent employees" pursuant to CBA Rule 24, Def.'s Mem. at 4; see, e.g., Def.'s Facts ¶ 47 (stating that it was Ryan's "usual practice . . . [to] contact[] Amtrak's Human Resources Department to confirm [the] [p]laintiff's address"); id. ¶ 51 (stating that "Ryan did not attempt to contact [the] [p]laintiff by telephone, because it is Amtrak's policy to send Rule 24 communications exclusively in writing, so as to have a clear record of the same"), and that, "to the extent that [the] [p]laintiff [ ] seek[s] to challenge whether Amtrak's application of [those procedures] was fair or reasonable," Def.'s Clarification Not. at 2, she may not do so in this Court because "such an inquiry will require an interpretation of the relevant CBA," id.

To resolve the parties' dispute regarding the CBA Rule 24 correspondence, i.e., to determine what Ryan should have done under the circumstances, a fact-finder would have to interpret the CBA. Notably, the plaintiff does not dispute that Ryan complied with Amtrak's customary procedures in confirming her address with Amtrak's Human Resources Department and sending letters to her at that address regarding CBA Rule 24. Nor does the plaintiff identify any evidence to support her position that Ryan knew her correct address.[4] Thus, to adopt the plaintiff's position that Ryan should have done more

---

[4] The plaintiff testified that "Ryan knew about [her] new address," Said III, 317 F. Supp. 3d at 333; however, as Amtrak correctly notes, see Def.'s Clarification Not. at 1–2, the plaintiff did not provide any evidence to support that she or anyone else told Ryan her new address or that Ryan otherwise knew the new address, see Said III, 317 F. Supp. 3d at 332–33. Rather, she testified that she merely "told [Ryan she] had moved." Id. at 333. To the extent that the Court's opinion in Said III suggests that a reasonable jury could infer from this testimony that Ryan knew her correct address, see id. (observing that "the plaintiff has
(continued . . . )

15

than he did to contact her, and that the fact that he did not do more demonstrates pretext, a reasonable juror would necessarily have to conclude that Amtrak's customary procedures for confirming the plaintiff's address and that the manner in which Amtrak communicated with the plaintiff regarding CBA Rule 24 were insufficient. Therefore, the plaintiff's position that Ryan should have done more to contact her is essentially "a collateral attack on [Amtrak's] [ ] procedures" regarding CBA Rule 24 correspondence. Gilmore, 2012 WL 3205233, at *9. And, because the RLA's mandatory arbitration requirement applies to such procedures, see Fry v. Airline Pilots Ass'n, Int'l, 88 F.3d 831, 836 (10th Cir. 1996) (explaining that "minor disputes [covered by the RLA] . . . implicate practices, procedures, implied authority, or codes of conduct that are part of the working relationship"), the statute bars the consideration of evidence supporting such an attack, which would necessarily require an interpretation of the CBA, see Gilmore, 2012 WL 3205233, at *9 (barring the plaintiffs from "present[ing] evidence of irregularities in the investigation or hearing that led to . . . [their] termination[s]" because "[t]o consider whether th[o]se procedures were irregular w[ould] require an interpretation of the relevant portions of the CBA, written or not"). Thus, the Court also erred by determining that a reasonable jury could rely on the plaintiff's evidence of the circumstances surrounding Amtrak's CBA Rule 24 correspondence as a basis for finding for the plaintiff.

---

( . . . continued)
provided some, albeit very little, evidence that Ryan knew her correct address at the time he sent her Rule 24 correspondence"), this was error. The Court now finds that, at most, a reasonable juror could infer from the evidence presented by the plaintiff that Ryan knew that the plaintiff's address of record was not her current address. Thus, in this Memorandum Opinion, the Court does not accept the plaintiff's position that a reasonable juror could find that Ryan actually knew her correct address.

The plaintiff suggests that the RLA preempts "only [ ] disputes invoking contract based rights." Pl.'s Opp'n at 9 (citation omitted). However, the Supreme Court cases cited by the plaintiff to support this proposition do not impose any such limits, but instead recognize that the RLA more broadly preempts "disputes involving the application or interpretation of a CBA." Hawaiian Airlines, 512 U.S. at 255. And, this Circuit has held that the RLA may preclude claims invoking rights based on federal law. See Oakey, 723 F.3d at 234 (concluding that the RLA precluded a plaintiff's claim under the Employment Retirement Income Security Act because the issue of whether the defendant properly terminated the plaintiff's benefits depended on whether an amendment to a CBA was effective).[5] Thus, the Court cannot agree with the plaintiff that RLA preemption or preclusion is limited to only those disputes invoking rights created by the CBA.

Having concluded that the RLA bars consideration of the plaintiff's evidence of pretext, the Court must next consider whether her remaining evidence of alleged discrimination—Ryan's alleged discriminatory remark to the plaintiff that "you all look alike," Said III, 317 F. Supp. 3d at 322—suffices to survive summary judgment. "Although a supervisor's single egregious remark may constitute direct evidence of discrimination entitling a plaintiff to a jury trial," Warner v. Vance-Cooks, 956 F. Supp. 2d 129, 155–56 (D.D.C. 2013), for the reasons already explained in Said III, Ryan's remark is not direct evidence of discrimination, see 317 F. Supp. 3d at 322, but rather constitutes indirect "evidence of Ryan's discriminatory intent that must be 'consider[ed]

---

[5] The plaintiff argues that Oakey is "distinguishable on its facts" because it involved "'a mandatory arbitration provision' that deprived the district court of jurisdiction." Pl.'s Opp'n at 9. However, the "mandatory arbitration provision" referred to in Oakey is the RLA itself, see Oakey, 723 F.3d at 231, and therefore, it does not serve as a basis for factually distinguishing the Circuit's decision in Oakey. Thus, the plaintiff's argument does not compel the Court to conclude that the principles applied by the Circuit in Oakey do not apply in this case.

alongside . . . all other evidence[] to determine whether [the] plaintiff has met her burden,'" id. at 325 (quoting Morris v. McCarthy, 825 F.3d 658, (D.C. Cir. 2018)). However, Ryan's alleged remark cannot, on its own, suffice to satisfy the plaintiff's evidentiary burden of establishing racial discrimination by Amtrak. As this Circuit has instructed, even though Ryan's alleged remark may demonstrate that Ryan "harbored a discriminatory attitude toward [African American] employees," the plaintiff "must show more than a general bias against [African American] employees; she must also introduce enough evidence for a reasonable jury to find that her [termination] was motivated by that bias." Morris, 825 F.3d at 670. Therefore, because the Court has concluded that the plaintiff cannot rely on her evidence challenging the validity of the defendant's proffered reasons for her termination, see id. at 671 (noting that an employee showed that racial bias motivated her suspension by "challeng[ing] the objective validity of" her employer's proffered reasons for suspending her), and because she has not provided any other evidence to demonstrate that Ryan's alleged racial bias motivated Amtrak's decision to terminate her, the Court must conclude that the plaintiff has not satisfied her evidentiary burden of demonstrating discrimination by Amtrak.

The plaintiff's counterarguments are unavailing. At oral argument, the plaintiff's counsel insisted that a jury would not need to consider the CBA to resolve the plaintiff's claims because "the key thing here is [whether Amtrak] kn[e]w [the plaintiff] was away [from work] and the reason why she was away." Oral Argument Transcript 9:3–4 (June 12, 2019). However, the plaintiff's counsel also conceded that this issue is the "cr[ux] of [CBA] Rule 24." Id. 8:1–2. As the Court has already explained, the plaintiff's argument would necessarily require a jury to interpret CBA Rule 24 to determine whether the Rule

18

applied to the plaintiff's situation.  And, the plaintiff's counsel's acknowledgement that the applicability of CBA Rule 24 is "key," id. 9:3, and is "the crux of the whole case," id. 14:1, actually supports the Court's conclusion that a jury cannot consider the plaintiff's evidence of pretext without interpreting the CBA, cf. Brown, 254 F.3d at 664 (concluding that the RLA precluded a plaintiff's claim because "the heart of the dispute between the parties [wa]s a disagreement over the interpretation of some part of the CBA").

In her briefing following oral argument, the plaintiff suggests that additional evidence of Ryan's alleged discriminatory animus exists.  See Pl.'s Clarification Resp. at 2 (referring to Ryan's "discriminatory statements" (emphasis added)); see also id. at 3 (referring to "Ryan's discriminatory animus that he exemplified in his racial comments[,] which is reinforced by the sad story that made [ ] Ryan think all black women look alike" (emphasis added)).  However, to the extent that the plaintiff's counsel's reference to additional evidence regards "the events surrounding [Ryan's] son's incarceration" and Ryan's alleged statements regarding those events, Said III, 317 F. Supp. 3d at 325 n.12, as the Court explained in its July 10, 2018 Memorandum Opinion, this evidence is "inadmissible hearsay and may not be considered in resolving [the defendant's] motion for summary judgment," id. (quoting Lemmons v. Georgetown Univ. Hosp., 431 F. Supp. 2d 76, 90 (D.D.C. 2006) (Walton, J.)).  The plaintiff's counterarguments therefore fail to persuade the Court that she has satisfied her evidentiary burden.

Thus, the Court is now compelled to conclude that the plaintiff has failed to produce sufficient evidence to support both her race and gender discrimination claims. Accordingly, the Court must grant Amtrak's motion for reconsideration.

## IV. CONCLUSION

For the foregoing reasons, the Court grants Amtrak's motion for reconsideration. Specifically, the Court amends its July 10, 2018 Memorandum Opinion, <u>Said v. National Railroad Passenger Corp.</u>, 317 F. Supp. 3d 304 (D.D.C. 2018) (Walton, J.), to clarify that the RLA bars consideration of the plaintiff's evidence challenging Amtrak's proffered reasons for her termination and to grant summary judgment in Amtrak's favor on the plaintiff's race and gender discrimination claims.

**SO ORDERED** this 18th day of July, 2019.

REGGIE B. WALTON<br>United States District Judge